UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN THOMSON,

     Plaintiff,

v.                                                                Case No.:  6:23-cv-1758-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

---

## OPINION AND ORDER

Plaintiff John Thomson seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("SSA"), finding he was no

longer disabled since August 1, 2016. The Commissioner filed the Transcript of the

proceedings ("Tr." followed by the appropriate page number), and the parties filed

legal memoranda setting forth their positions. As explained below, the decision of

the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at \*2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

Generally, an ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Yet when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for a Title II claim and a seven-step process for a Title XVI claim to determine whether a plaintiff's disability benefits should continue. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b). Here, the ALJ followed a seven-step evaluation and the Court adopts the explanation of each step as set forth in the decision. (Tr. 28-29).

### C.    Procedural History

In a determination dated February 2, 2012, Plaintiff was found disabled beginning on January 1, 2010. (Tr. 28). On June 16, 2016, SSA determined that Plaintiff was no longer disabled as of August 1, 2016. (Tr. 28, 85). After a disability hearing by a State agency Disability Hearing Officer, the determination was upheld upon reconsideration. (Tr. 28).

Plaintiff requested a hearing, and on October 26, 2022, a hearing were held before Administrative Law Judge Pamela Houston. (Tr. 41-73). On December 19, 2022, the ALJ entered a decision finding Plaintiff's disability ended on August 1, 2016, and he had not become disabled again since that date. (Tr. 28-35). On August 9, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 12, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

**D.     Summary of ALJ's Decision**

In this case, the ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the determination dated February 2, 2012. (Tr. 29). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 29). At the time of the CPD, the ALJ found Plaintiff had the following medically determinable impairments: "blurred vision, limited depth perception, bright light sensitivity, inability to read books or newspapers even with magnifying glass, glaucoma, hypermetropia, astigmatism, and presbyopia." (Tr. 29-30). The ALJ further found that Plaintiff did not develop any additional impairments after the CPD through August 1, 2016 and so Plaintiff's current impairments were the same as the CPD impairment. (Tr. 30).

At step one, the ALJ found that since August 1, 2016, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.925, 416.926). (Tr. 30). At step two, the ALJ found that medical improvement occurred on August 1, 2016. (Tr. 30). At step three, the ALJ found that the medical improvement was related to the ability to work because by August 1, 2016, Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the same listing or listings that was met at the time of the CPD. (Tr. 30). At step five, the ALJ found that since August 1, 2016, Plaintiff's impairment has continued to be severe. (Tr. 30).

At step six, the ALJ found that beginning on August 1, 2016, Plaintiff has had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, beginning August 1, 2016, claimant has had the residual functional capacity (RFC) for medium exertional work (20 [C.F.R. §] 416.967(c)) except he can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. Avoid: work at heights, work with dangerous machinery and dangerous tools. He can perform work tasks that can be up to, 1-5 steps (e.g., simple tasks), performed repetitively at his own workstation, with no requirement for reading, handling money or small objects (the size of a screw or less), or seeing less than 14-point text.

(Tr. 31).

At step seven, the ALJ determined that Plaintiff had no past relevant work. (Tr. 33). After considering Plaintiff's age (53 years old on August 1, 2016),

education (at least high school), work experience, and RFC, the ALJ found that since August 1, 2016, Plaintiff had been able to perform a significant number of jobs in the national economy. (Tr. 33-34). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) Patient transporter, DOT 355.677-014,[1] medium, SVP 2

(2) Sandwich maker, DOT 317.664-010, medium, SVP 2

(3) Bartender helper, DOT 312.687-010, medium, SVP 2

(Tr. 34). The ALJ concluded that Plaintiff's disability ended on August 1, 2016, and he had not become disabled again since that date. (Tr. 35).

## II.    Analysis

On appeal, Plaintiff raises the issue of whether the ALJ erred in relying on a response from a vocational witness to an incomplete hypothetical. (Doc. 25, p. 4). Plaintiff claims that he testified that he had double vision, could not see in bright light, had watery eyes, had poor equilibrium, and had poor depth perception. (Doc. 25, p. 6). Plaintiff argues that the ALJ understated Plaintiff's visual impairments in the decision. (Doc. 25, p. 6). Within this same issue, Plaintiff raises another issue: whether a person with Plaintiff's limited vision and RFC restriction to avoid jobs with dangerous machinery and dangerous tools could perform the job of sandwich

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

maker that requires the use of a slicer. (Doc. 25, p. 8-9). The Court begins with this issue.

In the RFC assessment, the ALJ limited Plaintiff as follows: "Avoid: work at heights, work with dangerous machinery and dangerous tools." (Tr. 31). At the hearing, the ALJ posed hypotheticals to the vocational expert that included these limitations. (Tr. 64). The vocational expert testified that a person with these limitations could perform the jobs of patient transporter, sandwich maker, and bartender helper. (Tr. 64-65). Focusing on the sandwich maker position, the ALJ later asked the vocational expert whether this position would require a person to use a knife. (Doc. 66). The vocational expert replied, yes. (Tr. 66). Indeed, the DOT describes the job of sandwich maker as:

> Prepares sandwiches to individual order of customers: Receives sandwich orders from customers. Slices cold meats and cheese by hand or machine. Selects and cuts bread, such as white, whole wheat, or rye, and toasts or grills bread, according to order. Places meat or filling and garnish, such as chopped or sliced onion and lettuce, between bread slices. Prepares garnishes for sandwiches, such as sliced tomatoes and pickles. May cook, mix, and season ingredients to make dressings, fillings, and spreads. May fry hamburgers, bacon, steaks, and eggs for hot sandwiches. May butter bread slices, using knife.

*See* 317.664-010 Sandwich Maker, DICOT 317.664-010, 1991 WL 672749. Under this description, a sandwich maker uses both a slicer (an arguably dangerous machine) and a knife (an arguably dangerous tool).[2] *Id.*

---

[2] Also included in the DOT job description, is the use of some type of hot grill or stove to cook

In support of the ALJ's findings, the Commissioner contends that the vocational expert based her testimony on the DOT, and her education, training, and experience. (Doc. 27, p. 11). Thus, the Commissioner claims that the ALJ properly relied on this testimony when finding jobs in the national economy that a person with Plaintiff's limitations could perform, including a sandwich maker. (Doc. 27, p. 11). At the hearing, the ALJ asked the vocational expert if she testified pursuant to her education, experience, and the DOT. (Tr. 71). The vocational expert replied that she did. (Tr. 71). The ALJ then asked with regard to matters not in the DOT, what did the vocational expert base her testimony on. (Tr. 72). The vocational expert testified that as to attendance, workplace lighting, and work station, she based her testimony on her experience of more than 25 years of research. (Tr. 72).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the

---

hamburgers, bacon, steak, or eggs. Again neither the ALJ nor the vocational expert explained why this requirement was not in conflict with avoiding the use of dangerous machinery and tools.

ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

An apparent conflict exists. This conflict is between the vocational expert's testimony based on the hypothetical posed, and the DOT job description of sandwich maker. The DOT describes a sandwich maker as using both a meat and cheese slicer, either by hand or machine, and a knife. The RFC had a limitation to avoid using dangerous machines and tools. Neither the vocational expert nor the ALJ identified this apparent conflict with the job duties of a sandwich maker, offered any explanation, or resolved the conflict. Without the ALJ addressing this apparent conflict and providing a reasonable explanation for continuing to include this job, the sandwich maker job is off the table. But the ALJ's failure to address the apparent conflict does not end the matter. *Viverette*, 13 F.4th 1317. A court must consider whether the error was harmless. *Id.*

The ALJ listed two other jobs, patient transporter, and bartender helper that arguably do not present apparent conflicts.[3] If these other jobs exist in significant numbers in the national economy, then the error of including the sandwich-maker job may be harmless, but as explained below, it is not harmless error.

---

[3] The Court makes no findings on whether a person with Plaintiff's limitations is able to perform the jobs of patient transporter and bartender helper.

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

If the remaining two jobs exist in significant numbers in the national economy, then the error may be harmless. In *Viverette*, the vocational expert testified that there were 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. 13 F.4th at 1318. The ALJ referenced the jobs collectively and

treated the three occupations (one of which was off the table) cumulatively to

determine whether jobs existed in significant numbers in the national economy. *Id.*

"In other words, the ALJ did not make a finding about how many final assembler or

check weigher jobs were available nationally or whether the number of final

assembler and check weigher jobs, either separately or cumulatively, constituted a

significant number, absent the document preparer jobs." *Id.* And the Court clarified

that this finding "'is a question of fact to be determined by a judicial officer [i.e., the

ALJ].'" *Id.* (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) and *Brooks*

*v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005)). The Court found:

> Here, the ALJ based her finding of fact on the VE's testimony
> about a total number of 125,000 jobs, without considering an
> apparent conflict that affected 104,000 of those jobs. Given
> that over eighty percent of the jobs presented to the ALJ are
> affected by the apparent conflict and that we are reviewing the
> decision of the ALJ (on behalf of the Commissioner) for
> substantial evidence, we are hesitant to make any factual
> determinations ourselves about whether the final assembler or
> check weigher positions exist in significant numbers in the
> national economy. Where additional (or more specific) agency
> fact-finding is needed, remand is the appropriate disposition.

 *Id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)).

Here, the ALJ similarly referenced the vocational expert's testimony

collectively concerning the number of jobs available in the national economy. (Tr.

34). The ALJ referenced the vocational expert's testimony that the patient-

transporter job has about 52,000 jobs available nationally, the sandwich-maker job

has about 110,000 jobs available nationally, and the bartender-helper job has about

30,000 jobs available nationally. (Tr. 34). The ALJ concluded, "[b]ased on VE testimony, the undersigned concludes that since August 1, 2016, claimant has been capable of making a successful adjustment to work that existed in significant numbers in the national economy." (Tr. 34). The ALJ did not, however, find the number of patient-transporter jobs or bartender-helper jobs, taken singly or in combination, existed in significant numbers in the national economy. (Tr. 34); *see Viverette*, 13 F.4th at 1318. As in *Viverette*, the Court hesitates to make any factual determination about whether a significant number of jobs exists in the national economy if the sandwich-maker position is eliminated from these numbers.

Thus, as in *Viverette*, the Court cannot substitute its judgment for that of the ALJ to determine whether without the sandwich-maker job, the other jobs existed in significant numbers in the national economy sufficient to support a finding of not disabled. Remand is warranted on this issue.

## III.    Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the RFC assessment and the step five findings. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on   July 15, 2024.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties